IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| RICHARD A. WIELAND, <br> Acting United States Trustee, | ) <br> ) <br> ) | |
| Appellant, | ) <br> ) | |
| v. | ) | Case No. 07-2493-JWL |
| | ) | |
| RICHARD W. THOMAS and <br> KATHY LEE THOMAS, | ) <br> ) <br> ) | (Bankr. Case No. 06-21108-7) |
| Appellees. | ) <br> ) <br> ) <br> ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on appeal by the United States Trustee ("Trustee") from an order of the Bankruptcy Court denying the Trustee's motion to dismiss the underlying bankruptcy case pursuant to 11 U.S.C. § 707(b)(2). The Trustee argues that because debtors Richard and Kathy Lee Thomas ("the Thomases") do not have any monthly car payments, they may not take a car ownership expense deduction for purposes of avoiding a presumption of abuse of Chapter 7 of the Bankruptcy Code under the "means test" set forth in subsection 707(b)(2). The Court agrees with the Trustee that the statute does not provide for a deduction for car ownership expense if no such expense is actually incurred. Accordingly, the Court grants the Trustee's appeal, reverses the Bankruptcy Court's order, and remands the case for further proceedings as necessary.

**I.     Statutory Framework**

The "means test" was imposed by Congress as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Upon motion by the United States Trustee, the bankruptcy court may dismiss a case filed under Chapter 7 of the Bankruptcy Code by an individual debtor "whose debts are primarily consumer debts" if "the granting of relief would be an abuse of the provisions" of Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 707(b)(1). Under subsection 707(b)(2), with respect to a debtor whose current monthly income exceeds the median family income for his locality, the court "shall presume abuse exists" if the debtor fails the "means test"—that is, if his income reduced by certain monthly expenses exceeds a particular amount. *Id.* § 707(b)(2), (7). One such expense is provided as follows:

> The debtor's monthly expenses shall be the debtor's *applicable monthly expense amounts specified under the National Standards and Local Standards*, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

*Id.* § 707(b)(2)(A)(ii)(I) (emphasis added).

The National Standards and Local Standards are tables setting out various expense amounts that are used by the IRS in collecting delinquent taxes. The National Standards set forth amounts allowed as expenses for food, clothing, housekeeping, personal care, and miscellaneous items, based on family size and gross monthly income.

2

The Local Standards set forth expense amounts for transportation and for housing and utilities. With respect to transportation, the Local Standards provide amounts for operating costs and public transportation costs, based on locality and the number of cars owned (up to two). The Local Standards also provide single amounts (not based on locality) for ownership costs relating to a first and second car. The Local Standards for housing and utilities are based on family size, payment of a mortgage or rent, and county. Finally, the IRS's collection standards allow for consideration of other necessary expenses actually incurred, based on the circumstances of each case.

As applied by the IRS, the amounts contained in the Local Standards are caps—the delinquent taxpayer is allowed the Local Standard or the amount actually incurred for transportation or housing, whichever amount is less. That point is made clear in the Financial Analysis Handbook of the Internal Revenue Manual, which provides instructions for collection by the IRS. The Handbook explicitly provides that if a taxpayer has no car payment, he is not allowed any car ownership expense, and only the operating cost portion of the transportation standard is used. *See* Internal Rev. Man. §§ 5.8.5.5.2.3, 5.15.1.7.4.B.[1]

If a presumption of abuse arises under the means test, it "may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or

---

[1] The current National and Local Standards and the Internal Revenue Manual may be found on the IRS website. The National and Local Standards in effect at various times in the past may be found on the website for United States Trustee Program.

order to active duty in the Armed Forces." 11 U.S.C. § 707(b)(2)(B)(i). Under subsection 707(b)(3), even if the presumption of abuse does not arise or is rebutted, the court may find abuse based on the debtor's bad faith in filing the bankruptcy petition or the totality of the circumstances of the debtor's financial situation. *Id.* § 707(b)(3).

The legislative history for BAPCPA reveals that "[t]he heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31(I), 2005 U.S.C.C.A.N. 88, 89. The new consumer bankruptcy provisions were intended to respond to several factors, including the escalation of consumer bankruptcy filings and the "growing perception that bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort;" the adverse financial consequences for the economy as a whole resulting from increased filings; loopholes and incentives in the prior system "that allow and sometimes even encourage opportunistic personal filings and abuse;" and the fact that "some bankruptcy debtors are able to repay a significant portion of their debts." *Id.* at 90-92.

Moreover, the report accompanying the act notes that the prior standard for dismissal—"substantial abuse"—was inherently vague. *Id.* at 98. Accordingly, the new statute replaces the prior presumption in favor of discharge with a mandatory presumption of abuse arising under a certain formula. *Id.* at 99, 119.

## II.     Factual Background

On July 27, 2006, the Thomases filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In required filings, the Thomases claimed transportation ownership expenses of $471 and $332—amounts set forth in the Local Standards in effect at that time—for two cars that they owned free and clear of any debt. The Thomases do not dispute that, without those deductions, they would fail the means test and a presumption of abuse would arise under subsection 707(b)(2).

After reviewing the Thomases' filings, the Trustee moved to dismiss the case as abusive under either subsection 707(b)(2), based on a presumption of abuse under the means test, or subsection 707(b)(3), based on the totality of the circumstances. On October 2, 2007, the Bankruptcy Court rejected both bases for dismissal and denied the Trustee's motion. The Trustee now appeals to this Court the Bankruptcy Court's denial of its motion to dismiss pursuant to subsection 707(b)(2).[2]

## III.    Analysis

The Trustee challenges the Bankruptcy Court's ruling that 11 U.S.C. § 707(b)(2) allows the Thomases to take a deduction for car ownership expense in the amount set forth in the Local Standards, even though the Thomases do not make any car payments. Because this appeal "raises a legal question regarding the proper interpretation of the

---

[2]The Trustee does not appeal the Bankruptcy Court's ruling under subsection 707(b)(3).

Bankruptcy Code," the Bankruptcy Court's order is subject to de novo review. *Jobin v. McKay (In re M&L Bus. Mach. Co.)*, 84 F.3d 1330, 1334-35 (10th Cir. 1996); *see also Travelers Ins. Co. v. Am. AgCredit Corp. (In re Blehm Land & Cattle Co.)*, 859 F.2d 137, 138 (10th Cir. 1988) (bankruptcy court's conclusions of law are subject to de novo review).

The Court begins with the language of the particular statute at issue. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). The Court's inquiry ceases if "the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal quotation omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* at 341.

Subsection 707(b)(2) provides that, for purposes of calculating whether a presumption of abuse arises, the debtor's expenses "shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Thomases argue that the language "shall be the . . . amounts specified under the . . . Local Standards" means that a debtor is allowed the exact dollar figures found in the Standards ($471 and $332 in this case) without reference to whether the debtor actually makes car payments. The Trustee argues that the use of the word "applicable" reveals Congress's intent to allow deductions for categories of expenses that apply to the particular debtor, and that therefore a debtor may

6

take a transportation ownership deduction only if he in fact incurs a monthly ownership expense, i.e., a car payment.

Neither the Tenth Circuit nor any other circuit court of appeals has addressed this issue. Lower federal courts, including bankruptcy courts in this district, have split on the issue without reaching a clear majority. *See, e.g.*, *In re Canales*, 377 B.R. 658, 662 (Bankr. C.D. Cal. 2007) (listing cases). *Compare In re Howell*, 366 B.R. 153, 155-58 (Bankr. D. Kan. 2007) (ownership expense not allowed without actual car payment), *with In re Puetz*, 370 B.R. 386, 391 (Bankr. D. Kan. 2007) (amounts in Local Standards allowed even if not incurred), *and In re Lanning*, 2007 WL 1451999, at *7 (Bankr. D. Kan. May 15, 2007) (same). The Court is more persuaded by the Trustee's argument that the statute should be construed to allow a car ownership expense only if the debtor in fact incurs such an expense in the form of a car payment, and it believes that the Tenth Circuit would adopt such an interpretation. Accordingly, the Bankruptcy Court's order is reversed.

The statute provides that the debtor's expense shall be "the applicable expense amounts specified under the National and Local Standards." This language does not suggest an intent by Congress that the numbers should simply be plucked from the Standards for a debtor's expenses under the means test as if in a vacuum, without reference to the *context and meaning* of those numbers. The numbers in the Standards do not represent expense allowances; rather, they represent *caps* on expense allowances, as the IRS intends that the *lesser* of the Standard amount and the person's actual expense

7

be used for all of the National and Local Standards. Thus, in allowing the "applicable . . . amounts specified under the . . . Standards," Congress has imported those tables as a whole, with their contents' context and meaning—i.e., with the numbers representing caps, as *applied* by the IRS—into the means test calculation. Moreover, the reference to amounts specified "under" the Standards indicates that one should use the numbers that result when the Standards are applied as they usually are, and not simply use the numbers appearing "in" the Standards.

The Court's interpretation is not undermined by the fact that the next provision in the statute allows for the debtor's "actual monthly expenses for the categories specified as Other Necessary Expenses." *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I). The use of "actual" in this instance and not with respect to the Standards does not mean that the debtor may use the amounts from the Standards even if not actually incurred. The IRS does not promulgate caps for Other Necessary Expenses, but allows the actual expenses incurred for those categories; thus, the use of "actual" in reference to those categories is consistent with adoption of the entire IRS collection approach. The use of "actual" with respect to the Standards would not have been appropriate because a debtor is *not* allowed his actual transportation (or housing or food) expense if that expense exceeds the cap listed in the Standards. The juxtaposition of "applicable . . . amounts" and "actual . . . expenses" in the statute is not inconsistent with the Court's interpretation.

The Court is also not persuaded by the statute's failure to refer to or incorporate the Internal Revenue Manual, which instructs that the numbers in the Standards represent

caps. Again, the statute as written sufficiently adopts the numbers in their context as part of the National and Local Standards created by the IRS. It is also worth noting that the committee report accompanying the statute makes specific reference to the IRS's Financial Analysis Handbook in connection with the National and Local Standards. *See* H.R. Rep. No. 109-31(I), 2005 U.S.C.C.A.N. 88, 99-100. Thus, it does not appear that Congress intended to adopt only the numbers contained in the Standards without the context and meaning provided by the IRS in creating the Standards and in its normal application of those numbers as set forth in the Handbook and Manual.

Although the proper interpretation is dictated by the language of the statute itself, the Court notes that its interpretation comports with the purposes of BAPCPA. As noted above, those amendments were "intended to ensure that debtors repay creditors the maximum they can afford." *Id.* at 89. That purpose is best achieved by applying the means test in such a manner that the debtor's actual financial circumstances—i.e., what the debtor can actually afford to repay creditors—are represented. If a debtor were permitted a car ownership allowance when he actually incurs no such expense, application of the means test would not accurately reflect the debtor's ability to repay creditors, and the purpose of the statute would be frustrated.

Nor does the Court's interpretation run afoul of Congress's intent to employ a more objective test that does not require analysis of the details of a debtor's entire financial situation. It hardly requires a complex analysis for a debtor to refrain from taking a car ownership allowance if he makes no car payments.

9

The Court also rejects the various policy arguments advanced by the Thomases in support of their position. The Thomases first argue that allowing an ownership deduction even without a car payment makes sense because cars that have been paid off are more likely older cars that will require replacement or more significant repairs. Such a concern is already addressed in the IRS's normal application of the Standards, by which an additional $200 per month is permitted for ownership expenses for cars of a certain age and mileage. *See* Internal Rev. Man. § 5.8.5.5.2.3.

The Thomases next argue that the Court's interpretation discriminates against poorer debtors because only those debtors stuck with older cars (which are more likely to have been paid off) cannot take an ownership allowance. As the Trustee notes, however, the means test for abuse under subsection 707(b)(2) only applies to debtors with above-median incomes. *See* 11 U.S.C. § 707(b)(7).

The Thomases also suggest that, under this interpretation, the means test arbitrarily distinguishes between a debtor who has made his final car payment just before filing for bankruptcy (ownership expense not allowed) and one with only a few payments remaining (expense allowed). The statute adequately addresses the latter scenario, however, by providing for dismissal for abuse also on the basis of the totality of circumstances, *see id.* § 707(b)(3); those circumstances would no doubt include the fact that an ownership expense does not represent the true state of affairs for the latter debtor.

Finally, the Thomases suggest that the Court's interpretation encourages debtors

10

to incur new debt (in the form of a car payment) immediately before filing for bankruptcy for the purpose of avoiding the presumption of abuse. Such a tactic, however, would not likely pass muster under subsection 707(b)(3), which also provides for dismissal for abuse if the debtor has filed in bad faith. *See id.*

The Court concludes that because the Thomases make no car payments, they may not take any deduction from their monthly income for transportation ownership expense, and the presumption of abuse arises here under the means test set forth in subsection 707(b)(2)(A).[3] In accordance with the Trustee's request, the case is therefore remanded to the Bankruptcy Court for further proceedings, including a determination of whether the Thomases may rebut the presumption of abuse by demonstrating "special circumstances" under subsection 707(b)(2)(B).

IT IS THEREFORE ORDERED BY THE COURT THAT this appeal by the United States Trustee is **granted**; the Order of the Bankruptcy Court denying the United States Trustee's motion to dismiss pursuant to 11 U.S.C. § 707(b)(2) is **reversed**; and the case is remanded to the Bankruptcy Court for further proceedings in accordance with

---

[3]In interpreting this statute, some courts have concluded that Congress adopted the entire IRS approach, whereby a debtor with car payments may only take a deduction for the lesser of the actual expense and the Local Standards cap amount; while other courts have concluded that such a debtor may claim a fixed allowance in the amount contained in the Local Standards. *See Canales*, 377 B.R. at 666-67. The Court need not resolve that issue in this case because the Thomases, who make no car payments, are not eligible for a deduction under either approach. *See id.* (declining to resolve issue).

11

this opinion, as necessary.

       IT IS SO ORDERED.

       Dated this 3rd day of March, 2008, in Kansas City, Kansas.

                                   s/ John W. Lungstrum
                                   John W. Lungstrum
                                   United States District Judge